1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT
9                          EASTERN DISTRICT OF CALIFORNIA
10

11   ROBERT BENNETT,                         No.  2:15-cv-01764-MCE-CMK
12                    Plaintiff,
13        v.                                  **MEMORANDUM AND ORDER**
14   THE COUNTY OF SHASTA, et al.,
15                    Defendants.
16

17        Plaintiff Robert Bennett ("Plaintiff") alleges his constitutional rights were violated

18   when local law enforcement seized his dogs from his Shasta County property.  He thus

19   brings this action against the County of Shasta ("County"), Sheriff Tom Bosenko

20   ("Sherriff") in his official capacity, Officer Mayra Morris ("Morris") in her official capacity,

21   Officer Colleen Ferrara ("Ferrara") in her official capacity, and the Haven Humane

22   Society ("Haven").  This Court granted the County's and Haven's Motions for a More

23   Definite Statement (ECF Nos. 14 and 15), and Plaintiff then filed his First Amended

24   Complaint ("FAC") (ECF No. 27).  Presently before the Court are Defendants' Motions to

25   ///

26   ///

27   ///

28   ///

                                          1

Procedure Dismiss the FAC (ECF Nos. 29 and 30) pursuant to Federal Rule of Civil

12(b)(6).  For the following reasons, the Motions are GRANTED in their entirety.[1]

## BACKGROUND[2]

Plaintiff has bred Shepadoodles at his property in Shasta County since 2006.  In

August 2011, Plaintiff started receiving nuisance complaints regarding his dogs.

On February 3, 2013, Ferrara found two dogs running in Plaintiff's neighborhood

without an owner present.  She believed them to be Plaintiff's and returned the animals

to his property with assistance from Morris, the Sheriff's Animal Care and Enforcement

Unit Manager.  In doing so, Plaintiff alleges both officers unlawfully entered his property

to investigate the living conditions of his dogs.  Morris and Ferrara repeated these acts

the next day despite his request that they leave.  Over this two-day period, Plaintiff

claims he was cited for violating six different animal ordinances, see e.g., Shasta, CA,

County Ordinances ch. 6.04 (1991), and California Penal Code § 597, titled "Cruelty to

animals."  See FAC ¶¶ 27 and 28.[3]

On May 16, 2013, the County served Plaintiff with a search warrant and

seized all of his dogs.  Plaintiff was cited for five additional animal ordinances at that time

and was charged with violating Penal Code § 591, which criminalizes tampering with

---

[1] Both sides have requested that the Court take judicial notice of certain documents.  The County's and Haven's request for judicial notice of the search warrant and probable cause affidavit, and a criminal complaint against Plaintiff filed on May 16, 2013 is unopposed and therefore GRANTED (ECF No. 29-1 and 30-1).  Although Plaintiff alleges the warrant is "defective," see FAC ¶ 73, he nonetheless recognizes its existence.  Additionally, Plaintiff's request for judicial notice of a criminal complaint filed against him on July 8, 2013, Shasta County ordinance provisions, the Federal Animal Welfare Act, and minutes of a Shasta County Board of Supervisors meeting is also unopposed and therefore GRANTED (ECF Nos. 32 and 34).

[2] Unless otherwise noted, this section is derived from the allegations contained within Plaintiff's Verified First Amended Complaint (ECF No. 27), Plaintiff's Opposition to County Defendant's Motion to Dismiss First Amended Complaint (ECF No. 31), and Plaintiff's Opposition to Defendant Haven Humane Society's Motion to Dismiss First Amended Complaint (ECF No. 33).

[3] All further references to the "Penal Code" are to the California Penal Code unless otherwise indicated.

2

1    telephone, cable or other electricity lines.  During the seizure that culminated in his

2    arrest,, Plaintiff claims a gun was pointed at his head, the arresting officer used

3    unreasonable force, and several verbal threats were made towards him.

4         Plaintiff requested a post-seizure administrative hearing to avoid forfeiture of his

5    dogs, pursuant to Penal Code section 597.1(j).  The hearing lasted over a month and

6    was conducted by a "hearing officer."  The officer required $3,000 in improvements on

7    Plaintiff's land to demonstrate that he could "provide the necessary care for the" dogs.

8    See § 597.1(j).  After Plaintiff allegedly made improvements, he argues the County

9    visited his property and told him he "had done a great job, but would 'like it' if he made

10   some additional improvements."  FAC ¶ 57.

11        Plaintiff further alleges the entire post-seizure process was flawed because the

12   hearing officer was biased, the scope of the hearing was improper, he was not allowed

13   to subpoena witnesses, no factual evidence was produced by the County, and he did not

14   have counsel throughout the proceedings.  With respect to bias, Plaintiff points to the

15   fact that he was excluded from a closed-door conversation between the officer and the

16   County.  As to scope, he claims the hearing officer failed to address whether the seizure

17   of Plaintiff's animals was proper when the officer remarked that such a determination

18   was "above his pay grade."  FAC ¶ 119.

19        On August 23, 2013, the "Results After Hearing" stipulated that Plaintiff cover the

20   costs incurred by the County in housing the dogs at a rate of $15 each day for each dog.

21   Plaintiff asserts he was required to pay $3,600 in lien charges, and that the County

22   demanded another $4,000.  In the end, Plaintiff's dogs were not returned and his

23   property interest in the animals was deemed forfeited on December 22, 2013.

24        On July 8, 2013, the same day Plaintiff's post-seizure hearing began, he was

25   charged "in violation of Section 597.1 of the Penal Code."  Pl.'s Opp. to Def.'s Mot. to

26   Dis; see also ECF No. 32-1.  However, Plaintiff was ultimately convicted of only Shasta

27   County ordinances.  See ECF No. 29-3.

28   ///

3

1    Plaintiff brings this lawsuit seeking a declaration that Penal Code section 597.1 is

2 void for vagueness, that the County Defendants' conduct violated his Fourth Amendment

3 rights, and that Defendants violated his right to due process.  Plaintiff also seeks a

4 minimum of $250,000 related to the loss of his dogs.  He also brings a claim alleging that

5 Defendants conspired to interfere with his civil rights pursuant to 42 U.S.C. § 1985.  For

6 their part, Defendants challenge the legal sufficiency of the entirety of Plaintiff's

7 complaint.  They argue that Plaintiff only has standing to challenge one provision of

8 Penal Code section 597.1 and that that provision is sufficiently clear for due process

9 purposes as a matter of law.  They also contend that Plaintiff has not alleged sufficient

10 facts to support his claims against the County and that Plaintiff's inability to allege his

11 membership in a suspect class dooms his § 1985 claim.

12

13                                              **STANDARD**

14

15    On a motion to dismiss for failure to state a claim under Federal Rule of Civil

16 Procedure 12(b)(6), all allegations of material fact must be accepted as true and

17 construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins.

18 Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and plain

19 statement of the claim showing that the pleader is entitled to relief' in order to 'give the

20 defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell

21 Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

22 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require

23 detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of

24 his entitlement to relief requires more than labels and conclusions, and a formulaic

25 recitation of the elements of a cause of action will not do."  Id. (internal citations and

26 quotations omitted).  A court is not required to accept as true a "legal conclusion

27 couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting

28 Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief

4

1    above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright &

2    Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the

3    pleading must contain something more than "a statement of facts that merely creates a

4    suspicion [of] a legally cognizable right of action")).

5          Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket

6    assertion, of entitlement to relief." Twombly, 550 U.S. at 555 n.3 (internal citations and

7    quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard

8    to see how a claimant could satisfy the requirements of providing not only 'fair notice' of

9    the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright &

10    Miller, supra, at 94, 95). A pleading must contain "only enough facts to state a claim to

11    relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their

12    claims across the line from conceivable to plausible, their complaint must be dismissed."

13    Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge

14    that actual proof of those facts is improbable, and 'that a recovery is very remote and

15    unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

16          A court granting a motion to dismiss a complaint must then decide whether to

17    grant leave to amend. Leave to amend should be "freely given" where there is no

18    "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

19    to the opposing party by virtue of allowance of the amendment, [or] futility of the

20    amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.

21    Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

22    be considered when deciding whether to grant leave to amend). Not all of these factors

23    merit equal weight. Rather, "the consideration of prejudice to the opposing party . . .

24    carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,

25    185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that

26    "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group,

27    Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006,

28    1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.

1   1989) ("Leave need not be granted where the amendment of the complaint . . .

2   constitutes an exercise in futility . . . .")).

3

4   **ANALYSIS**

5

6   Defendants' Motions are GRANTED as to all five of Plaintiffs' causes of action.

7   Initially, with respect to Plaintiff's First Cause of Action, which seeks a judicial

8   determination that various Penal Code sections are vague as applied, Plaintiff has

9   standing to challenge only Penal Code section 597.1, and despite Plaintiff's argument to

10  the contrary, that subsection is far from vague.  Furthermore, the allegations relevant to

11  Plaintiff's Second, Third, and Fourth causes of action fail to demonstrate municipal

12  liability and must therefore be dismissed.  Plaintiff's Third Cause of Action also fails to

13  state a claim against Haven because the allegations are insufficient to establish either

14  that Haven deprived him of due process or that Haven acted under color of law.  Finally,

15  Plaintiff's Fifth Cause of Action under 42 U.S.C. § 1985 must be dismissed because

16  Plaintiff cannot show that he is a member of a suspect class.

17  **A.    The Only Provision of Penal Code section 597.1 That Plaintiff
            Has Standing to Challenge is Neither Vague on its Face nor
18          Vague as Applied**

19  To challenge any law, a party must demonstrate "injury in fact, causation, and a

20  likelihood that a favorable decision will redress [his] alleged injury."  Carrico v. City and

21  County of San Francisco, 656 F.3d 1002, 1005 (9th Cir 2011) (citing Lopez v. Candaele,

22  630 F.3d 775, 785 (9th Cir.2010)).  Here, Plaintiff lacks standing to challenge sections

23  597.1 (a), (g), or (h) because he was never convicted of these provisions.  See ECF

24  Nos. 29-2 and 29-3.  He was convicted of only Shasta County ordinances, which are not

25  in dispute here.  See Carrico, 656 F.3d at 1005.

26  Plaintiff did receive a post-seizure administrative hearing, pursuant to sub-section

27  (j), and thus has standing to challenge this provision.  Penal Code section 597.1(j)

28  provides: "No animal properly seized under this section or pursuant to a search warrant

6

1    shall be returned to its owner until the owner can demonstrate to the satisfaction of

2    the seizing agency or hearing officer that the owner can and will provide the necessary

3    care for the animal."  Plaintiff requests the provision be deemed "void for vagueness,

4    and at a minimum, void for vagueness as applied."  FAC ¶ 62; see Schwartzmiller v.

5    Gardner, 752 F.2d 1341, 1347 (9th Cir. 1984) (requiring a "facial" and "as applied"

6    analysis to be exclusive of each other).

7         A law will be deemed vague on its face if the challenging party can demonstrate

8    the text is "impermissibly vague in all its applications."  Castro v. Terhune, 712 F.3d

9    1304, 1310-11 (9th Cir. 2013) (citing Humanitarian Law Project v. U.S. Treasury Dep't,

10   578 F.3d 1133, 1146 (9th Cir. 2009)) (internal quotation marks omitted).  In adjudicating

11   a facial vagueness challenge, courts conduct a disjunctive, two-part test.  F.C.C. v. Fox

12   Television Stations, Inc., 132 S. Ct. 2307, 2317 (2012).  First, courts ask whether the

13   statute in question provides sufficient guidance to the parties that it regulates so that

14   they can understand "what is required of them [and] act accordingly[.]"  Id. (citing

15   Grayned v. City of Rockford, 408 U.S. 104, 108–09 (1972)).  Second, the statute must

16   preclude arbitrary and discriminatory application by providing precise guidance to law

17   enforcement.  Id.

18        As to the first prong, Plaintiff alleges the phrase "necessary care for the animal" is

19   vague.  Essentially, he claims that a person of "ordinary intelligence" has no "reasonable

20   opportunity" to know what the law expects of him.  See Hunt v. City of Los Angeles,

21   638 F.3d 703, 712 (9th Cir. 2011).  But in this context, the word "necessary" is not

22   vague.  See People v. Yates, 114 Cal. App. Supp. 782, 789 (Cal. App. Dept's Super. Ct.

23   1931).  Although some are more compassionate with their dogs than others, California

24   law clearly establishes a minimum standard for the permissible treatment of animals.

25   See Hutcherson v. Arizona Health Care Cost Containment System Admin., 667 F.3d

26   1066, 1070 (9th Cir. 2012) (holding that a statute must be read in light of its "purpose

27   and context"); see e.g., § 597; 597.1(a).

28   ///

7

1    The ordinary, reasonable person could review section 597.1(j) and the

2    surrounding statutory scheme and ascertain that animals need water, food, shelter, and

3    should not be subject to abuse.  See People v. Speagle, 62 Cal. Rptr. 2d 384, 388 (Cal.

4    Ct. App. 1997) (reviewing § 597 (b), stating "the terms "necessary" … and "proper" all

5    give fair notice of an objective standard of reasonableness … in the avoidance of

6    infliction of suffering").  Accordingly, the phrase "necessary care for the animal" is one of

7    "common understanding[.]"  See California Teachers Ass'n v. State Bd. of Educ.,

8    271 F.3d 1141, 1151 (9th Cir. 2001).

9    The second-prong of a facial challenge asks whether the statute "impermissibly

10    delegates basic policy matter to policemen, judges, and juries for resolution on an ad

11    hoc and subjective basis, with the attendant danger of arbitrary and discriminatory

12    application."  See Hunt, 638 F.3d at 712.  Here, Plaintiff alleges the agency or hearing

13    officer has no "restraint" in determining what satisfies "necessary care," which leads to

14    "unfettered discretion."  FAC ¶ 53, 55.

15    The statute is silent on how one can demonstrate to another's "satisfaction," but

16    "enforcement requires the exercise of some degree of police judgment."  Grayned,

17    408 U.S. at 114.  It would be inefficient to list every way an owner can prove "necessary

18    care," because what is "necessary" depends upon the unique circumstances that gave

19    rise to the seizure, see Speagle, 62 Cal. Rptr. 2d at 388 (stating "[t]here are an infinite

20    number of ways in which the callously indifferent can subject animals in their care to

21    conditions which make the human cringe" and it is "impossible for the Legislature to

22    catalogue every act").  Instead, the provision allows for an individual hearing to delineate

23    the  "precision" required in the context of a specific case.  See Fox Television Stations,

24    Inc., 132 S. Ct. at 2317.

25    The post-seizure administrative hearing allows owners to engage in a process

26    that determines whether any animals may be returned.  If at any time during the hearing,

27    confusion, disagreement, or indicia of "unfettered discretion" arises, the owner should

28    clarify, rebut, or produce evidence in support of his position.  A hearing conducted

8

1    accordingly limits "unfettered discretion."  For these reasons, section 597.1(j) is not

2    "impermissibly vague in all its applications" and Plaintiff's facial vagueness challenge

3    therefore fails.  See Castro, 712 F.3d at 1310-11.

4         In analyzing Plaintiff's "as applied" vagueness challenge, the Court must consider

5    the facts as they occurred in the present case and read the statute as the highest court

6    of the state would.  Schwartzmiller, 752 F.2d at 1348 (quoting Wainwright v. Stone,

7    414 U.S. 21, 22-23 (1973)).  Generally, the inquiry is whether an individual had adequate

8    notice of the conduct that was expected.  See U.S. v. Harris, 705 F.3d 929, 932 (9th Cir.

9    2012).

10        As the County argues, certain provisions in section 597.1 are "clear and without

11   ambiguity."  Broden v. Marin Humane Society, 83 Cal. Rptr. 2d, 235, 243 (Cal. Ct. App.

12   1999).  In Broden, the court analyzed section 597.1 (i).  It provides that seized animals

13   will be returned to their owner, unless the "humane society or public agency is not

14   assured, within 14 days of the seizure of the animal, that the owner will provide the

15   necessary care."  There, it was held the owner had an obligation "to give assurances

16   that he would provide the seized animals with necessary care."  Id.  Although section

17   597.1 (j) does not state a time-frame, the inquiry is generally the same: whether Plaintiff

18   knew he had to give assurances to comply with the findings in order for his dogs to be

19   returned.  See Broden, 83 Cal. Rptr. 2d at 243.

20        Starting in 2011, Plaintiff refused to cooperate with animal control regarding his

21   neighbors' complaints about his dogs.  ECF No. 29-2, Exh. A ("Statement of Probable

22   Cause").  He apparently ignored the County's repeated attempts to contact him.  Id.  On

23   February 4, 2013, the day Ferrara and Morris returned to his property, Morris argues that

24   Plaintiff claimed he did not have eight dogs, "even when all the dogs were in plain sight

25   of [Morris] and barking non-stop."  Id.  On April 22, 2013, Morris drove to Plaintiff's

26   property where she saw 12 dogs barking, fighting with each other, and confined in pens.

27   Morris further observed one dog was restrained by a chain.  Id.

28   ///

1    Plaintiff claims that his property was "appropriate for the breeds he owned," FAC

2    ¶ 55, but he apparently did not have a permit or license to operate a kennel, or any other

3    large-scale dog operation, see ECF No.29-2 ("There was no kennel license on file [for

4    Plaintiff].").   See also Shasta Ordinances, ch. 6.04.080 (an individual may not own more

5    than six dogs, unless the owner had a "commercial animal establishment permit"); ch.

6    6.04.060 (requiring all dogs over four months to be licensed with the animal regulation

7    unit).

8    Finally, Plaintiff alleges the County's comments lured him on in a false

9    expectation that he would get his dogs back.  The County has successfully refuted that

10   allegation through judicially noticed written recommendations which tell  Plaintiff that he

11   must provide "covered [and] adequate kennels, concrete pads, and ensure his dogs had

12   a ready supply of fresh water."  ECF No. 29-2, p. 7.  Additionally, Plaintiff's post-seizure

13   administrative hearing, which lasted over 45 days, provided him with an opportunity to

14   seek clarification as to, for example, what "adequate" kennels relative to his kennels

15   meant.  In spite of these opportunities, Plaintiff makes no allegations indicating that he

16   ever attempted to comply with those recommendations, nor are there any allegations

17   that he attempted to dispel his own confusion about their substance. See FAC ¶ 56.

18   Moreover, Plaintiff did in fact receive notice during the course of the post-seizure hearing

19   that he needed to make specific "assurances" to the satisfaction of the hearing officer.

20   See Harris, 705 F.3d at 932.  His displeasure with local County ordinances, standing

21   alone, fails to state a claim.  For these reasons, Plaintiff's vagueness challenges to

22   section 597.1(j) are DISMISSED.

23
             **B.    Plaintiff's Fourth, Fifth, and Fourteenth Amendment Challenges
                     Fail to Establish Liability**
24

25   Plaintiff's Second, Third, and Fourth claims allege as follows: (1) that Morris and

26   Ferrara, acting in their official capacities for County, violated his Fourth Amendment right

27   to be free from unreasonable searches and seizures; (2) that the County violated his

28   right to due process by not giving him a pre-seizure hearing; and (3) that a lack of

1    procedural safeguards in the post-seizure hearing violated his Fourteenth Amendment

2    right of due process.

3            Because even the individual County Defendants are sued in their official

4    capacities, all three claims seek damages from the County.  Accordingly, Plaintiff must

5    demonstrate that the County is liable pursuant to Monell v. Dep't of Soc. Servs. of

6    New York, 436 U.S. 658 (1978), and its progeny.  Specifically, Plaintiff must allege facts

7    sufficient to show that the County deprived him of his rights through an official policy,

8    practice, or custom.  Alternatively, Plaintiff's claims will survive if he has alleged facts

9    that Bosenko[4] ratified the unconstitutional conduct of any subordinates or that the

10   County failed to train its employees to avoid violating the rights of individuals.  See e.g.,

11   Christie v. Iopa, 176 F.3d 1231, 1239 (9th Cir. 1999); Tsao v. Desert Palace, Inc.,

12   698 F.3d 1128, 1145 (9th Cir. 2012).

### 1.  Violation of the Fourth Amendment (42 U.S.C. § 1983) against County Defendants

15           Plaintiff makes three arguments with respect to his Fourth Amendment claim.

16   First, he alleges Morris and Ferrara unlawfully entered his property with the intent to

17   discover the conditions of his dogs.  He states that Morris and Ferrara's acts "were

18   sanctioned" by Bosenko for these acts.  FAC ¶ 69.  However, ratification requires a final

19   decision maker to "expressly approve[] of the acts." Trevino v. Gates, 99 F.3d 911, 920

20   (9th Cir. 1996) (emphasis added).  A conclusory statement that Bosenko "sanctioned"

21   Morris and Ferrara's actions, without more, is insufficient to plausibly establish that

22   Bosenko expressly approved of their acts and thereby ratified their conduct.

23           Second, Plaintiff alleges the warrant to seize his dogs was "defective."  FAC ¶ 73.

24   He argues the February incidents with the officers led to an unlawfully obtained search

25   warrant.  Evidence obtained in an unlawful manner may still be admitted if it is obtained

26   through an "independent source."  Utah v. Strieff, No. 14-1373, 2016 WL 3369419, at *5

27   _____

28      [4] This analysis assumes that Sherriff Tom Bosenko is a final policy maker for the County of Shasta.

1 (2016) (citing <u>Murray v. United States</u>, 487 U.S. 533, 537 (1988)).  Here, Plaintiff fails to

2 rebut any of the evidence that was obtained independently of the February incidents.

3 <u>See</u> ECF No. 29-2.  Accordingly, this argument also fails.

4       Finally, Plaintiff argues an unreasonable seizure occurred when excessive force

5 was applied during his arrest.  In support, he states the arresting officers "roughly" took

6 Plaintiff outside of his house, "forced" handcuffs onto his wrists, twisted his arms, and

7 "locked [him] in a patrol car."  FAC ¶ 75-77.  These allegations do little more, however,

8 than describe the circumstances surrounding most arrests.

9       More startling is Plaintiff's allegation that an officer, with Morris' alleged approval,

10 pointed a gun at Plaintiff's head and told him, "I could kill you."  FAC ¶ 74.  There is no

11 factual support beyond this conclusory statement, however, that Morris was the County's

12 "final policy maker" with respect to that conduct.  <u>See</u> <u>Christie</u>, 176 F.3d at 1239.

13 Additionally, while Plaintiff states that the officer who pointed the gun was "acting under

14 Sheriff Bosenko's authority," FAC ¶ 74, he fails to sufficiently allege how Bosenko could

15 plausibly have ratified that conduct under the circumstances present here.  <u>See</u> <u>Christie</u>,

16 176 F.3d at 1239.  Plaintiff's third and final argument therefore fails as well.

17 Consequently, for all of these reasons, Plaintiff's "Second Cause of Action" is

18 DISMISSED.

19
20     **2.  Violation of the Fifth and Fourteenth Amendments (42 U.S.C.
        § 1983) against all Defendants**

21       Plaintiff brings a due process claim under the Fourteenth Amendment for the

22 County's and Haven's failure to provide him with a pre-seizure hearing.[5]  At the outset,

23 the Court addresses a faulty premise underlying much of Plaintiff's FAC.  He adamantly

24 believes he was entitled to a pre-seizure hearing, instead of only a post-seizure one.

25 Plaintiff points to section 597.1 (g), which requires "a hearing prior to any seizure or

26
27      [5] The FAC fails to explicitly make these distinctions, but the Court construes Plaintiff's Third Cause of Action to bring a due process claim under the Fourteenth Amendment and a takings claim under the Fifth Amendment because the Fifth Amendment's due process clause applies only to the federal government.  <u>Barron v. Baltimore</u>, 32 U.S. 243, 250 (1833).

28

1    impoundment of the animal."  But a warrant provided the basis for his seizure.  It was not

2    "authorized by [section 597.1]," <u>see</u> § 597.1 (g).  Accordingly, Plaintiff was not entitled to

3    a pre-seizure hearing. [6]

4         Furthermore, Plaintiff fails to allege any facts sufficient to demonstrate that the

5    County must be held liable for depriving him of his right to a pre-seizure hearing.  <u>See</u>

6    <u>e.g.</u>, <u>Monell</u>, 436 U.S. 658.  The only support Plaintiff offers in that regard  is a statement

7    that Bosenko "specifically … implemented a policy to target Plaintiff, and seize his

8    animals through the use of a warrant and/or other means and failing to provide a bona

9    fide opportunity to determine if the seizure was proper."  FAC ¶ 89.  That statement,

10   however, is nothing more than a "legal conclusion couched as a factual allegation[.]"

11   <u>See Iqbal</u>, 556 U.S. at 678.  Accordingly, Plaintiff's "Third Cause of Action" against the

12   County is DISMISSED.

13        Plaintiff makes a due process claim against Haven as well.  He alleges Haven

14   deprived him of a pre-seizure hearing and "failed to keep [his dogs] safe," <u>see</u> FAC ¶

15   104.[7]  Haven is a non-profit organization that entered into a contract with the County.

16   Haven played no role in seizing Plaintiff's dogs on May 16, deciding what statutes or

17   ordinances to charge Plaintiff with, or conducting the post-seizure administrative hearing.

18        A private actor may be liable for constitutional torts if it acts "under color of state

19   law."  <u>Tsao v. Desert Palace, Inc.</u>, 698 F.3d 1128, 1139-40 (9th Cir. 2012).  A two-step

20   analysis determines whether liability attaches.  <u>Villegas v. Gilroy Garlic Festival Ass'n</u>,

21

22        [6] Plaintiff further states the County's and Haven's actions amounted to "an unconstitutional taking."
     FAC ¶ 103.  The Fifth Amendment's Takings Clause, through selective incorporation, does apply to state
     and local governments.  <u>Chicago, Burlington & Quincy Railroad Co. v. City of Chicago</u>, 166 U.S. 226, 241

23   (1897).  Plaintiff's factual support for the "Third Cause of Action," however, seems entirely directed
     towards a due process claim.  <u>See</u> FAC ¶¶ 80-111.  The same is true for Plaintiff's Opposition to County

24   Defendants' Motion to Dismiss (ECF No. 31).  With no mention of public "use" or "purpose" in any of his
     documentation, and only conclusory statements that his dogs were taken without "compensation,"

25   Plaintiff's Takings claim lacks sufficient factual allegations to state a claim entitling him to relief.  <u>See e.g.</u>,
     <u>Kelo v. City of New London</u>, 545 U.S. 469, 480 (2005).

26        [7] It is unclear if Plaintiff alleges Haven violated his due process rights because it failed to grant him
     a pre-seizure hearing.  Alternatively, whether or not Plaintiff claims Haven violated his due process

27   because they failed to keep his dogs safe is also unclear.  For the purpose of this Order, this Court will
     assume Plaintiff makes both such contentions.

28

1   541 F.3d 950, 954-55 (9th Cir. 2008) (citing Lugar v. Edmondson Oil Co., 457 U.S. 922,

2   939 (1982)).  First, "whether the claimed deprivation has resulted from the exercise of a

3   right or privilege having its source in state authority."  Id. (internal quotations omitted).

4   Second, given the facts, whether the private entity "may be appropriately characterized"

5   as a state actor.  Id. (internal quotations omitted).

6       Haven had no "right or privilege having its source in state authority" to decide

7   what type of hearing Plaintiff was entitled.  See Villegas, 541 F.3d at 954-55.  Decisions

8   to charge him with certain ordinances, state penal codes, and request a search warrant

9   before a judge, were entirely those of the County.  Haven thus cannot be said to have

10  been a state actor in depriving Plaintiff of a pre-seizure hearing.  See id.

11      Plaintiff further alleges that Haven's "fail[ure] to keep [his dogs] safe" violated his

12  due process rights.  FAC ¶ 104.  It may be possible for Plaintiff to hold Haven liable for

13  such a failure.  See e.g., Nevada Dept. of Corrections v. Greene, 648 F.3d 1014, 1019

14  (9th Cir. 2011) ("An agency … violates the Due Process Clause of the Fourteenth

15  Amendment when it prescribes and enforces forfeitures [w]ithout underlying [statutory]

16  authority and competent procedural protections.") (citing Vance v. Barett, 345 F.3d 1083,

17  1090 (9th Cir. 2003)) (internal quotations omitted).  But the Court need not decide that

18  issue here because Plaintiff has not sufficiently alleged how or when Haven "failed to

19  keep [his dogs] safe."  There are no allegations that Haven was responsible for causing

20  the injuries, or as to what type of injury to his dogs occurred.  It is also unclear if Plaintiff

21  even had a property interest in the dogs at the time of the alleged injury.  While Haven

22  may act "under color of state law" within its contractual duties, Plaintiff's naked statement

23  to that effect is plainly inadequate.  See Twombly, 550 U.S. at 570.  For these reasons,

24  Plaintiff's Third Cause of Action is DISMISSED against the County and Haven.

### 3.  Violation of due process pursuant to the Fourteenth Amendment against the County Defendants

27      Plaintiff's Fourth Cause of Action claims that the safeguards in his post-seizure

28  hearing were improper.  This claim differs from Plaintiff's claim that he was entitled to a

1    pre-seizure hearing, but it is not different enough.  It is clear to this Court that Plaintiff's

2    Fourth Cause of Action is nothing more than a guise to reassert his unfounded belief that

3    he was entitled to a pre-seizure hearing.  See FAC ¶ 131 ("[T]he County violated

4    Plaintiff's due process rights because he was deprived of the safeguard set forth in the

5    Penal Code ensuring that the seizure was proper in the first instance.").

6        This Court also finds Plaintiff's claim that "[t]he county failed to provide any notice

7    at the time of the seizure that Plaintiff was entitled to a post-seizure hearing," unavailing.

8    FAC ¶ 115.  Plaintiff was served the "Search Warrant and Affidavit" on the day his dogs

9    were seized.  ECF No. 29-2.  That document clearly advises Plaintiff that if ownership of

10   the dogs is contested, "an evidentiary hearing to determine ownership will be ordered

11   following formal notice and request for hearing properly filed with the court by an

12   interested party."  Id.

13       Finally, Plaintiff alleges that his right to due process at the hearing itself was

14   violated because of a closed door conversation between an unnamed County attorney

15   and because the hearing officer refused to adjudicate the propriety of the seizure of

16   Plaintiff's dogs.  The FAC, however, contains no allegations that the County had a policy

17   to hold improper post-seizure hearings, or that Bosenko or any other individual with final

18   policymaking authority ratified anyone's decision to hold an improper hearing. [8]  See

19   e.g., Monell, 436 U.S. 658.  Plaintiff's Fourth Cause of Action is accordingly DISMISSED.

20              **C.  Membership in "A Class of One" is Insufficient to**
21              **Recover under 42 U.S.C. § 1985**

22       Plaintiff brings his final claim under 42 U.S.C. § 1985 (3).  That statute provides:

23   "If two or more persons…conspire…for the purpose of depriving, either directly or

24   indirectly, any person or class of persons of the equal protection of the laws…the party

25   _____

26       [8] Plaintiff appears to bring this claim outside the purview of 42 U.S.C. § 1983.  His FAC includes
     "42 U.S.C. § 1983" in the header for his Third Cause of Action, but only includes "Violation of Due Process
27   Pursuant to the Fourteenth Amendment Against the County Defendants" in his Fourth Cause of Action.
     However, "section 1983 remains the exclusive remedy for federally-guaranteed rights when a suit is
     brought against a state actor."  Roberson v. City of Goldsboro, 564 F. Supp. 2d 526, 529 (E.D.N.C.
28   May 15, 2008) (citing Jett v. Dallas Independent School Dist., 491 U.S. 701, 735 (1989)).

1    so injured or deprived may have an action for the recovery of damages…against any

2    one or more of the conspirators."  Liability under § 1985(3) requires proof of "some

3    racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the

4    conspirators' action."  Griffin v. Brekenridge, 403 U.S. 88, 102 (1971).

5          Plaintiff does not claim to have been targeted as a member of any class, let alone

6    a suspect class.  Instead, he claims to be a "class of one."  FAC ¶ 139.  Membership in a

7    "class of one" is plainly insufficient to entitle Plaintiff to relief under § 198(3).  Griffin,

8    403 U.S. at 102.  It would be similarly fatal for Plaintiff to claim that kennel owners were

9    being targeted.  See Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 269

10   (1993) ("[T]he term ["class"] unquestionably connotes something more than a group of

11   individuals who share a desire to engage in conduct that the § 1985 (3) defendant

12   disfavors.").

13         The County has a legitimate interest in ensuring the public is free from dogs

14   running loose in neighborhoods, and is not subject either to continuous dog barking

15   through the night, or the strong odor of dog feces.  For these reasons, Plaintiff's section

16   1985 claim is DISMISSED.

17                          **D.  Leave to Amend**

18         The foregoing analysis clearly demonstrates that it would be futile for Plaintiff to

19   amend his First and Fifth Causes of Action.  See Eminence Capital, LLC, 316 F.3d at

20   1052.  Penal Code section 597.1(j)'s text is clear, the facts alleged by Plaintiff and

21   judicially noticed by the Court doom his as-applied challenge, and he lacks standing to

22   challenge the other provisions of section 597.1  Moreover, Plaintiff's allegation that he is

23   a member of a "class of one" essentially admits that he is not a member of a suspect

24   class and therefore cannot recover under 42 U.S.C. § 1985.   Accordingly, Plaintiff's First

25   and Fifth claims are dismissed without leave to amend.

26         Plaintiff's Third Cause of Action is dismissed with leave to amend, but only in part.

27   Given that the search warrant's existence is undisputed, he has no legal basis to sue the

28   County or Haven for depriving him a pre-seizure hearing.  However, Plaintiff is allowed a

1 | final opportunity to amend this claim so that it sufficiently alleges that Haven violated his

2 | rights by failing to keep his dogs safe.  Plaintiff is also granted a final opportunity to

3 | amend his Second and Fourth Causes of Action, but is advised that he must not, under

4 | any condition, allege a due process violation for failure to provide a pre-seizure hearing.

5 |

6 | **CONCLUSION**

7 |

8 | For the reasons stated above, the County's and Haven's Motions to Dismiss (ECF

9 | Nos. 29 and 30) are GRANTED.  Plaintiff's First and Fifth causes of action are dismissed

10 | without leave to amend.  Plaintiff's Second and Fourth causes of action are dismissed

11 | with leave to amend.  Plaintiff's Third Cause of Action is dismissed with leave to amend

12 | solely in order to state a claim that Haven violated his due process rights by failing to

13 | keep his dogs safe.  The opportunities to amend the FAC given by this order will be

14 | Plaintiff's last.

15 | IT IS SO ORDERED.

16 | Dated:  July 12, 2016

17 |

18 | MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

17