UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ROBERT BENNETT,

           Plaintiff,

    v.

THE COUNTY OF SHASTA, et al.,

           Defendants.

No.  2:15-cv-01764-MCE-CMK

**MEMORANDUM AND ORDER**

Plaintiff Robert Bennett ("Plaintiff") alleges his constitutional rights were violated when local law enforcement seized his dogs from his Shasta County property.  This Court granted the Motions for a More Definite Statement (ECF Nos. 14 and 15) filed by Defendants County of Shasta ("County") and Haven Humane Society ("Haven"), and Plaintiff then filed a First Amended Complaint ("FAC") (ECF No. 27), which was subsequently dismissed (ECF No. 39).  Presently before the Court is Plaintiff's Second Amended Complaint ("SAC") (ECF No. 43), which Defendants have again moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF Nos. 50, 52. Defendants also filed separate Motions to Strike (ECF Nos. 51, 53) various portions of the SAC as exceeding the scope of the Court's prior order permitting leave to amend. *///*

For the following reasons, Defendants' Motions to Dismiss are GRANTED without leave to amend and their Motions to Strike are GRANTED in part and DENIED in part.[1]

**BACKGROUND[2]**

Plaintiff has bred Shepadoodles at his property in Shasta County since 2006. In August 2011, Plaintiff started receiving nuisance complaints regarding his dogs.

On February 3, 2013, Officer Colleen Ferrara[3] found two dogs running in Plaintiff's neighborhood without an owner present. She believed them to be Plaintiff's and returned the animals to his property. In doing so, Plaintiff alleges Ferrara unlawfully entered his property to investigate the living conditions of his dogs. The next day, Ferrara, this time with assistance from Officer Mayra Morris, who at the time was a unit supervisor in the Animal Regulation Department,[4] repeated these acts despite Plaintiff's request that they leave. Over this two-day period, Plaintiff claims he was cited for violating a number of different animal ordinances, see e.g., Shasta, California, County Ordinances ch. 6.04 (1991), and California Penal Code § 597, titled "Cruelty to animals." See SAC ¶¶ 40 and 47.[5]

On May 16, 2013, the County served Plaintiff with a search warrant and seized all of his dogs. Plaintiff was cited for five additional animal ordinances at that time and was charged with violating Penal Code § 597.1. During the seizure that culminated in his arrest, Plaintiff claims a gun was pointed at his head, the arresting officer used

_____

[1] Having determined that oral argument would not be of material assistance, the Court ordered this matter submitted on the briefing in accordance with E.D. Local Rule 230(g).

[2] Unless otherwise noted, this section is derived from the allegations contained within Plaintiff's SAC. ECF No. 43.

[3] Officer Ferrara is referred to in the SAC as both "Ferrara" and "Ferraro." For consistency, the Court will refer to her herein under the name "Ferrara."

[4] This Department is in turn headed by Sheriff Tom Bosenko.

[5] All further references to the "Penal Code" are to the California Penal Code unless otherwise indicated.

unreasonable force, and several verbal threats were made towards him (e.g., the officer pointing a gun at Plaintiff's head warned, "You know I could kill you."). SAC ¶¶ 198-202.

Plaintiff requested a post-seizure administrative hearing pursuant to Penal Code section 597.1(j) to avoid forfeiture of his dogs. The hearing lasted over a month and was conducted by a hearing officer, Richard Kuhns. According to Plaintiff, the entire post-seizure process was flawed because Kuhns was biased, the scope of the hearing was improper, Plaintiff was not allowed to subpoena witnesses, the County produced no factual evidence of abuse, and Plaintiff did not have counsel throughout the proceedings. With respect to bias, Plaintiff points to the fact that he was excluded from a closed-door conversation between the officer and the County.

On August 23, 2013, a "Results After Hearing" was issued directing that Plaintiff cover the costs incurred by the County in housing the dogs at a rate of $15 each day for each dog. Plaintiff asserts he was required to pay $3,600 in lien charges. In the end, Plaintiff's dogs were not returned and his property interest in the animals was deemed forfeited.

On July 8, 2013, the same day Plaintiff's post-seizure hearing began, he was charged with violating Section 597.1 of the Penal Code. Plaintiff was ultimately convicted, however, only of violating Shasta County ordinances.

In his FAC, Plaintiff sought a declaration that Penal Code section 597.1 was void for vagueness, that the County Defendants' conduct violated his Fourth Amendment rights, and that Defendants violated his right to due process. He also brought a claim alleging that Defendants conspired to interfere with his civil rights pursuant to 42 U.S.C. § 1985. Those claims were dismissed in their entirety. Plaintiff's Penal Code challenge (First Cause of Action) and his § 1985 claim (Fifth Cause of Action) were dismissed without leave to amend.

Plaintiff was permitted leave to amend his Third Cause of Action setting forth a due process claim, but only in part. Given that the search warrant's existence was undisputed, Plaintiff had no legal basis to sue the County or Haven for depriving him a

3

pre-seizure hearing.  Plaintiff was, however, allowed a final opportunity to amend that claim to sufficiently allege that Haven violated his rights by failing to keep his dogs safe once it had possession of them.  Finally, Plaintiff was also granted a final opportunity to amend his Second and Fourth Causes of Action (setting forth, respectively, an unreasonable search and seizure claim and an additional due process claim concerning the post-seizure hearing) but was advised that he must not, under any condition, attempt to allege a due process violation for failure to provide a pre-seizure hearing.

Plaintiff subsequently filed the SAC, which sets forth six causes of action:  (1) a Fourth Amendment unreasonable search and seizure claim against the County based on the warrantless searches of Plaintiff's property and Plaintiff's subsequent arrest; (2) a Fourteenth Amendment due process claim against the County for the impermissible retention and disposition of his dogs; (3) a Fourteenth Amendment due process claim against Haven and Dr. Cyanna Brauning Howden, DVM, Haven's Chief Medical Officer, for failing to adequately care for the seized dogs once they were in Haven's custody and for continuing to retain the dogs when they were no longer required for evidence; (4) a Fifth Amendment takings claim against the County and Haven for failing to return the dogs and/or afterborn puppies to Plaintiff; (5) a Fourth Amendment due process claim against the County and Kuhns based on the purported denial of Plaintiff's right to a fair and impartial hearing; and (6) a Fourth Amendment claim against the County and Sheriff Bosenko for failure to train and supervise the animal control officers.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the

4

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> (internal citations and quotations omitted).  A court is not required to accept as true a "legal conclusion couched as a factual allegation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." <u>Id.</u> at 555 n.3 (internal citations and quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." <u>Id.</u> (citing Wright & Miller, <u>supra</u>, at 94, 95).  A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 570.  If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." <u>Id.</u> However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" <u>Id.</u> at 556 (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend.  Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the

amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend).  Not all of these factors merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment."  Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

**ANALYSIS**

Defendants' Motions are GRANTED as to all six of Plaintiff's causes of action.  As a threshold matter, the Court notes that in various respects the changes Plaintiff made in drafting the SAC exceed the constraints of the Court's prior order granting Defendants' first motion to dismiss.  Most notably, for the reasons set forth in that order, the Court construed Plaintiff's FAC to seek only municipal, as opposed to individual liability.  See ECF No. 39 at 10-11.  In the SAC, on the other hand, Plaintiff now purports to bring various of his causes of action against Howden, Kuhns, and Bosenko individually.  SAC ¶ 21.[6]  The addition of these Defendants is improper because the Court did not grant Plaintiff leave to add additional parties.  For the same reason, Plaintiff also may not pursue individual claims against any other Defendant, and to the extent Plaintiff has attempted to do so, those claims are thus STRICKEN.[7]

---

[6] Plaintiff also includes a number of allegations against other individual Defendants, but none of them are named as Defendants in any cause of action set forth in the SAC.

[7] This result cannot be avoided by reference to California procedure permitting the substitution of Doe Defendants because, even assuming Doe pleading is permissible in federal court, Plaintiff was never

6

**A. First Cause of Action: Unreasonable Search and Seizure in Violation of the Fourth Amendment Against Defendant County**

Plaintiff makes three arguments with respect to his Fourth Amendment claim: (1) Morris and Ferrara unlawfully entered his property; (2) the warrant to seize his dogs was defective; and (3) excessive force was applied during his arrest. Because Plaintiff pursues only municipal liability, however, he must demonstrate that the County is liable pursuant to Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658 (1978), and its progeny.[8] Specifically, Plaintiff must allege facts sufficient to show that the County deprived him of his rights through an official policy, practice, or custom. Alternatively, Plaintiff's claims will survive if he has alleged facts that Bosenko[9] or any other final policy maker ratified the unconstitutional conduct of any subordinates. See e.g., Christie v. Iopa, 176 F.3d 1231, 1239 (9th Cir. 1999); Tsao v. Desert Palace, Inc., 698 F.3d 1128, 1143-45 (9th Cir. 2012).

The Court previously concluded that Plaintiff failed to state a claim on any of his theories because the facts did not support a finding of a constitutional violation (i.e., Plaintiff failed to allege the warrant was defective or that officers used anything other than reasonable force in handcuffing Plaintiff) and because he failed to show that any individual other than Bosenko was the County's "final policymaker" or that Bosenko had ratified any potentially actionable conduct (i.e., Plaintiff's claims that Morris and Ferrara unlawfully searched his property and that another officer pointed a gun to his head and warned "You know I could kill you"). For the same reasons, Plaintiff's SAC fares no better, and this cause of action is DISMISSED under the rationale set forth in the Court's

---

granted permission to substitute a Defendant in the first place. Nor has Plaintiff explained why he could not have named any of these parties as individual Defendants originally.

[8] As just indicated, Plaintiff was not granted leave to add claims against individual Defendants. Even had he been permitted to do so, however, Plaintiff expressly directed this cause of action only at the County.

[9] This analysis assumes that Sherriff Bosenko is a final policymaker for the County of Shasta.

1    prior order.[10]

2         The Court notes that Plaintiff did add allegations to the SAC to attempt to avoid

3    this result.  Namely, he alleged that at some point after the "raid" of his property, Morris

4    was promoted to "Manager," which Plaintiff contends shows that the officers' conduct

5    during the raid was condoned by Bosenko and/or the County.  SAC ¶ 204.  In addition,

6    Plaintiff averred that "Commander Lillibridge later threatened Plaintiff when he tried to

7    reclaim one of his dogs" thus demonstrating that the conduct set forth in the SAC was

8    "part of the custom and practice under Sheriff Bosenko and/or the County."  Id. ¶ 205.

9    Finally, Plaintiff contends that the challenged conduct "was condoned by the County

10   when it filed criminal charges against Plaintiff."  Id. ¶ 195.  None of these allegations

11   carry the day.

12        First, Plaintiff points to no authority standing for the proposition that the promotion

13   of an officer alone constitutes ratification of that officer's conduct absent some facts from

14   which it can be inferred that the entity's final policymaker actually had knowledge of and

15   approved of the purportedly unconstitutional conduct.  See Moua v. McAbee, 2007 WL

16   3492157 at *13 (E.D. Cal. 2007).  Second, the SAC lacks allegations explaining who

17   Commander Lillibridge is and what his job duties might be.  As such there are still no

18   facts from which the Court can infer that anyone with any policy making authority knew

19   of the incidents set forth in the SAC and approved of that conduct.  Finally, and in the

20   same vein, Plaintiff's claim that the filing of charges necessarily means that a final

21   County policymaker ratified the conduct underlying his instant complaint also falls short

22   of the mark.  No facts in the SAC indicate "that any prosecutor involved in [Plaintiff's]

23   case was a decisionmaker, had the power to set policy, or the power to ratify any law

24   enforcement officer's acts."  Wyant v. City of Lynnwood, 2010 WL 128389 at *5 (W.D.

25   Wash. 2010).  Because Plaintiff has failed to allege that the purportedly unconstitutional

26   search and seizure was conducted pursuant to any official County policy or custom or

27   _____

28        [10] That order is incorporated by reference in its entirety here.

8

1  that the conduct was ratified after the fact, his First Cause of Action against the County is
2  DISMISSED.

3        **B.**    **Second Cause of Action: Violation of Due Process Under the Fourteenth Amendment Against Defendant County for Disposal of Plaintiff's Property**

5        By way of Plaintiff's Second Cause of Action, he attempts to hold the County

6  liable for transferring the dogs to Haven and permitting Haven to sell them. According to

7  Plaintiff, he should have been able to recover an unclear number of dogs, but he "was

8  lulled into believing that his property would be returned to him without the need for a

9  motion." SAC ¶ 214. As with Plaintiff's above causes of action, Plaintiff has failed to

10  allege that the conduct giving rise to this claim took place pursuant to any official County

11  policy or custom intended to deprive pet owners who have violated ordinances of their

12  animals. Nor has Plaintiff offered any facts from which it can be inferred that a final

13  policymaker ratified the conduct. As such, Defendants' Motion to Dismiss the Second

14  Cause of Action is also GRANTED.

15        **C.**    **Third Cause of Action: Violation of Due Process Under the Fourteenth Amendment Against Haven and Howden[11]**

17        According to Plaintiff, Haven failed to properly care for his dogs and to keep them

18  safe while they were in Haven's custody. Haven is a non-profit organization that entered

19  into a contract with the County. A private actor may be liable for constitutional torts if it

20  acts "under color of state law." Tsao, 698 F.3d at 1138-40. A two-step analysis

21  determines whether liability attaches. Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d

22  950, 954-55 (9th Cir. 2008) (citing Lugar v. Edmondson Oil Co., 457 U.S. 922, 939

23  (1982)). First, "whether the claimed deprivation has resulted from the exercise of a right

24  or privilege having its source in state authority." Id. (internal quotations omitted).

25  Second, given the facts, whether the private entity "may be appropriately characterized"

26  as a state actor. Id. (internal quotations omitted).

27         [11] Because the claims against Howden have already been STRICKEN, this analysis considers only the claims against Haven.

9

The Court previously observed that it could be possible for Plaintiff to hold Haven liable for failing to properly care for the dogs. See e.g., Nevada Dept. of Corrections v. Greene, 648 F.3d 1014, 1019 (9th Cir. 2011) ("An agency … violates the Due Process Clause of the Fourteenth Amendment when it prescribes and enforces forfeitures [w]ithout underlying [statutory] authority and competent procedural protections.") (citing Vance v. Barett, 345 F.3d 1083, 1090 (9th Cir. 2003)) (internal quotations omitted). It thus permitted Plaintiff leave to amend this cause of action only to pursue his claim that Haven failed to keep his dogs safe.[12] Plaintiff has added such allegations, but has not rectified the other shortcomings identified by the Court in its prior order. Namely, it remains unclear from Plaintiff's allegations if he even had a property interest in the dogs at the time of the alleged injury, and Plaintiff has again failed to allege facts to plausibly support the conclusion that Haven acted as a state actor when caring for the dogs. See Twombly, 550 U.S. at 570. Nowhere does Plaintiff allege that the level of care Haven provided derived from any County policy or custom that would allow the inference that Haven's conduct was the result of "the exercise of a right or privilege having its source in state authority." Lugar, 457 U.S. at 939. In sum, the Court previously noted that "[w]hile Haven may act 'under color of state law' within its contractual duties, Plaintiff's naked statement to that effect is plainly inadequate." ECF No. 39 at 14. Plaintiff has added no material allegations supporting a contrary conclusion. For these reasons, Plaintiff's Third Cause of Action is DISMISSED.

**D.    Fourth Cause of Action: Takings Claim Under the Fifth Amendment Against the County and Haven**

By way of this cause of action, Plaintiff purports to pursue a Fifth Amendment claim asserting that the County and Haven deprived him of his property without just compensation. Plaintiff contends that "[a]ll of the acts of retaining the dogs indefinitely, and the puppies for any period, constituted a taking in violation of Plaintiff's rights." SAC

---

[12] Given the limits of the Court's prior order, to the extent Plaintiff attempted to revive his due process claim against Haven based instead on the initial seizure and continuing custody of the dogs, those allegations are STRICKEN.

¶ 243. This claim is also insufficiently pled.

The Court addressed this claim in its last order when it construed the FAC to attempt to bring a Takings cause of action as well as a due process claim based on the vague allegation that the County's and Haven's actions amounted to "an unconstitutional taking." ECF No. 39 at 13 n.6, citing FAC ¶ 103. It went on to conclude, however, that the factual allegations "seem[ed] entirely directed towards a due process claim" and that "[w]ith no mention of public 'use' or 'purpose' in any of his documentation, and only conclusory statements that his dogs were taken without 'compensation,' Plaintiff's Takings claim lack[ed] sufficient factual allegations to state a claim entitling him to relief." Id. Plaintiff failed to address these flaws in his SAC.

Instead, Plaintiff's allegations relevant to this claim remain conclusory and lacking in substance, which is not surprising since the dogs were not taken for public use but were seized pursuant to a valid warrant by a public entity exercising its police powers. Moreover, as with Plaintiff's other claims, there is no indication in the SAC that any conduct purportedly exceeding those police powers was done pursuant to County policy or custom or that it was ratified by a final County policymaker. Given the many failings undermining Plaintiff's Fourth Cause of Action, Defendants' Motions to Dismiss are GRANTED as to this claim.[13]

///
///
///
///
///
///

_____

[13] Even if this claim were adequately pled, the Court dismissed Plaintiff's Third Cause of Action with limited leave to amend only to permit Plaintiff to attempt to re-plead his due process claim against Haven to the extent it was based on the failure to care for the dogs while they were in Haven's custody. The Court did not permit Plaintiff leave to amend based on a Takings theory. Accordingly, the instant cause of action may be stricken as pled in contravention of the Court's prior order as well.

**E. Fifth Cause of Action: Violation of Due Process Pursuant to the Fourteenth Amendment Against the County and Kuhns for Denial of a Fair and Impartial Hearing**[14]

Plaintiff's Fifth Cause of Action claims that the safeguards in his post-seizure hearing were improper. Among other things, Plaintiff alleges that his right to due process at the hearing itself was violated because of a number of purported procedural defects, because of a closed door conversation between an unnamed County attorney and Kuhns, and because Plaintiff was required to pay a variety of fees prior to having some of the dogs returned to him. The Court rejected this claim as set forth in the FAC because it contained no allegations that the County had a policy to hold improper post-seizure hearings, or that Bosenko or any other individual with final policymaking authority ratified any of the conduct on which this claim is based. See ECF No. 39 (citing Monell, 436 U.S. 658). Plaintiff has fared no better in the SAC, having added no facts from which the Court might make any inferences necessary to hold the County liable. Accordingly, Plaintiff's Fifth Cause of Action is DISMISSED.

**F. Sixth Cause of Action: Failure to Supervise and/or Train Against Bosenko and the County**[15]

According to the SAC, Officer Morris was inadequately trained, and "[a] reasonable officer in [her] position would not have permitted the dogs that she purportedly [came] to take into custody for their own protection to be injured through harsh treatment." SAC ¶ 280. "In the alternative, to the degree that any officer in Sheriff Bosenko's animal control department had sufficient training, he failed to supervise them to ensure that they did not act in contravention of such training." Id. ¶ 282. In sum, Plaintiff contends that "Bosenko allowed his officers to engage in threats and excessive

///

---

[14] Although Plaintiff purports to bring this claim against Kuhns, as previously indicated, such an amendment exceeds the scope of the Court's prior dismissal order. As such, to the extent this claim is directed at Kuhns personally, it has already been stricken.

[15] Again, to the extent Plaintiff is attempting in the SAC to impose personal liability on Sheriff Bosenko, that claim has been stricken. Regardless, the allegations directed at him are wholly conclusory and insufficient under Federal Rule of Civil Procedure 8(a).

use of force, and allowed this conduct on multiple occasions such that it became a custom and practice in the County Sheriff's office." Id. ¶ 283.

As with the rest of Plaintiff's claims, the instant cause of action fails based on Plaintiff's inability to allege any basis for municipal liability. Even assuming Plaintiff's cursory allegations regarding the insufficiency of Morris' training were adequate, Plaintiff has failed to allege how the lack of training of one officer was the result of a constitutionally inadequate training program. See City of Canton v. Harris, 489 U.S. 378, 390-91 (1989) ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.").[16] Indeed, the SAC is devoid of facts supporting a plausible inference that "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Id. at 390. There are simply no facts indicating that the County's training program as a whole is inadequate or supporting a causal connection between any shortcomings in the training program and Plaintiff's alleged injuries. Finally, Plaintiff's allegation that Sheriff Bosenko failed to supervise the County's animal control officers is likewise conclusory and formulaic. Given these shortcomings, Defendants' Motion to Dismiss this cause of action is GRANTED as well.

///
///
///
///

---

[16] The Court is aware that Plaintiff argues in his opposition that his failure to train theory is also based on Officer Ferrara's purported lack of training. That is not, however, what Plaintiff pled. Plaintiff specifically based his Sixth Cause of Action on Morris's training only. Even if the Court accepted Plaintiff's argument, however, the SAC does not contain any facts indicating that Officer Ferrara was inadequately trained; it states only that there is nothing in the record indicating what type of training Ferrara received. This absence of facts cannot support the inference that Ferrara's training was constitutionally subpar.

**CONCLUSION**

For the reasons stated above, the Defendants' Motions to Dismiss (ECF Nos. 50, 52) are GRANTED and their Motions to Strike (51, 53) are GRANTED in part and DENIED in part.[17]  In its prior Order, the Court made clear that this would be Plaintiff's last opportunity to attempt to state a claim.  As such, this dismissal is without leave to amend.  The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:  August 7, 2017

MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

_____

[17] To the extent the arguments raised in the Motions to Strike were not expressly addressed above, they are DENIED as moot.